Good morning, Your Honors. May it please the Court, I'm David Hsu, Counsel for Petitioner. Your Honors, this case, the immigration judge denied petitioner's asylum and withholding application and made adverse credibility determination. And the BIA affirmed the immigration judge's decision without an opinion. The asylum application of the petitioner was based on two grounds. The first one is her claim of religious persecution. The second ground is her claim that she was forced to undergo an abortion by the Chinese family planning authorities. The immigration judge made adverse credibility finding on two grounds. The first one is he found petitioner does not have adequate or sufficient knowledge of the Christianity or the Bible in general. And the second ground is the immigration judge found a number of inconsistencies in petitioner's testimony and in the record. As to the issue whether petitioner has sufficient knowledge of Christianity, the record shows petitioner has demonstrated basic knowledge of the Bible and the Christianity. She testified consistently and in detail about the several stories of the Bible and also about the testimonies given by her fellow Christians at their Christian meetings in China. The immigration judge found petitioner lacks sufficient knowledge of Christianity mainly because the immigration judge believed as a practicing Christian for nine years, the petitioner should have been able to retell a number of Bible stories. At one point, the immigration judge suggested that petitioner should tell at least 10 to 15 Bible stories. And the immigration judge, the finding is clearly based on his speculation about how many Bible stories one must be able to tell, to recite, to be a Christian or practicing Christian for nine years. What are we to make of her conversion to Jehovah's Witness faith upon entering the United States? Because in the end, we're talking about a well-founded fear of future persecution, right? So shouldn't she have had to demonstrate that Jehovah's Witnesses were persecuted in China? Your Honor, petitioner has established past persecution and the presumption of a well-founded fear of persecution has not been rebutted by evidence by the government. Right. I guess the puzzling part about this to me is that assuming we credit your argument that she's established past persecution, then she would be entitled to a presumption of a well-founded fear of future persecution, but the basis of the on-account of prong has changed because her religion has changed. How do we analyze that? Your Honor, the country background information in the record showed that Christians in China are facing suppression by the government. And including all groups of Christians. And petitioner here, after she came to the United States, she testified she could not find a group of Christians similar to the Christian group she joined in China. So she joined another group, but that in itself does not show that she will not be persecuted if she go back to China. I gather your argument is that there is insufficient, that your argument would be that you don't have to show that this particular religion itself, so long as it is subsumed within the persecuted class of Christians, would be sufficient, right? Yes, Your Honor. Do you want to turn to your second claim? Yes, Your Honor. As to the abortion claim, the immigration judge found the petitioner's testimony not credible, mainly based on her testimony regarding the dates when she was caught and forced to undergo an abortion. The record shows petitioner initially testified consistently with the written declaration attached to her asylum application. And she testified she determined that she was pregnant in February 1995. And three months later, on May 6th or May 8th, 1995, she left home and went to the countryside. And at that point, the immigration judge stated that, you know, she stated that she knew the declaration and that she instructed the petitioner to deviate from the declaration sometimes so that he can get the whole story. That shows the immigration judge at that point believed petitioner's testimony was consistent with the declaration. But then the petitioner continued to testify that she was then taken to the hospital and was forced to undergo an abortion on May 16th, 1995. And at that point, the immigration judge interrupted and stated that petitioner, you know, completely misstated what petitioner has testified. And he stated that petitioner testified he was he had abortion on May 9th or May 8th, 1995, which was not the testimony of the petitioner. And the counsel for petitioner at that time pointed out to the judge that that was not the record, that was not petitioner testified. The other thing is that she was a little vague about dates, and that wouldn't necessarily bother me except that the lawyer said that she originally didn't know the dates at all and that many Chinese asylum seekers don't. So then where did she get the dates from? I mean, now all of a sudden she has dates, even though she didn't have any at all at the outset. Your Honor, at one point petitioner testified in the record when the judge asked her a question, he must answer. And she, most of the dates she provided at testimony was based on her recollection of the time of the sequence of the events, the length of time between two events. She remembered eight days after she went to the countryside, she was forced to undergo an abortion. That's the way she recalled what happened in the past, nine years ago or eight years ago. And she did have problems with dates. That was explained by herself and also by the attorney who testified at the hearing. Do you want to save some time for rebuttal? Yes, Your Honor. Thank you. Thank you, Your Honor. We'll hear from the government. Thank you. Good morning, Your Honors. My name is Patricia Corrales-Alleda, and I represent the government in this case. Petitioner's counsel is correct in that the IJA, in this case the immigration judge, denied the petitioner's application for asylum and withholding of deportation as well as protection under count because he found her testimony to be incredible. Now, the immigration judge didn't base his findings simply on conjecture or speculation, but rather on substantial evidence in the record. I think if you look at the record, as Your Honor pointed out, even her own lawyer said that she didn't have any recollection as to specific dates. Yet when she came in to testify, she had remarkably found, testified to specific dates, and even noted that they were unforgettable dates. Yet what calendar do they use in China? Your Honor. China doesn't follow the Julian calendar, does it? That's correct, Your Honor, and I do believe that her attorney mentioned that as well. But, in fact, her, as the immigration judge noted in questioning about that specific area, that the attorney was not really an expert witness to testify as to that. But even if you disregard the kind of calendar that is being used, Your Honor, I think it's very salient that in one hand you've got the petitioner internally, within her own testimony, giving inconsistent, excuse me, inconsistent dates as to when she was baptized. For example, when she was testifying as to her Christianity and her belief in Christianity, she testified that she was baptized in 1991. First she testified that she was baptized in her home, secretly. Then she testified that she was baptized in 1991 in the preacher's home. Upon questioning by her own attorney, Your Honors, she testified that she really didn't remember exactly whose home she was in, but that the preacher and that her schoolmate's home were the same. But she couldn't offer any evidence as to show that they had any kind of relationship or that they lived together in the same home. Interestingly enough, also in her declaration, Petitioner indicated that she was baptized in 1988. So we have not just minor inconsistencies, but substantial inconsistencies that go to the very heart of her claim for asylum. What's also very interesting in this case is how that is stuck. Kagan in all these, the immigration judge's obsession with the Bible stories. Your Honor, I'm glad you touched about that. I don't think, if you look at the record in its entirety, I think you'll find that the immigration judge in this case was very fair. He gave the Petitioner every benefit of the doubt. Kagan I was really pretty rude, actually, at some points. I don't know. I couldn't quite tell why, but he was quite sarcastic and rude. I couldn't quite figure out why. I was sending him off, but. And I understand the Court may have read that, but when I read the record, Your Honor, I didn't get that impression. Quite frankly, I got the impression that the immigration judge was more than fair to the Petitioner. In regards to the Bible stories, is it true that the immigration judge wanted to know whether she knew other Bible stories other than the basic Adam and Eve story and where Jesus was born? That is correct. He did ask whether or not she knew any other stories. But here's the Petitioner, Your Honor, who indicated both in her testimony and in her declaration that she began or began believing in Christianity in 1988 and held those practices, Christianity, for over nine years. In those nine years, the Petitioner was unable to recount any other testimony other than the Adam and Eve story, other than the fact that Jesus was born in Bethlehem or in Shek, as she called it. But she also said they didn't have a Bible to study, and they relied on stories that other people told and what the older people remembered from the Bible, correct? And that's very true, Your Honor. That's exactly what she testified. And even in understanding that, and the judge, the immigration judge pointed that out in his immigration decision that I'm not holding against her that she didn't have a Bible. I understand that. But even questioning, he questioned her as well as her attorney questioned her about the story she heard from the preacher, from the elders. What are the stories that they recounted to you? She could not recount any of those stories that the elders or the preacher, you know, testified to in those nine years. Now, this is a woman who, and I sympathize with her, but here's a woman who's telling us that she believed in Christianity from 1988 until the time she left, and then she joined the Jehovah Witnesses when she entered the United States. Here's a woman who testified in her testimony that she went to these meetings twice a week, and that she was there for long periods of time hearing the stories from the elders and from the preacher that would testify, would tell them about the Christianity as much as they could believe, and yet she couldn't recount any other stories than the basic Adam and Eve story. Do you think these two pieces are reciprocal? That is, if we were to think that the IJ's credibility ruling was supportable with regard to one of the grounds but not the other, does she then win or does she then lose? Your Honor, I think in this case, let me state that the IJ's credibility finding asks to both grounds. She has, I think, two grounds for seeking asylum in this case, both the religious ground that she is a member of the Christian faith and believes in Christianity and was persecuted on account of that belief, as well as the forced abortion and IUD ground. And I think in both grounds, I think the immigration judge made specific and quotient reasons to the IJ. I understand, but what I'm asking you is, quite specifically, if we thought that if this was two different cases, we would grant the petition if we were looking only at the religion ground, but we would deny it if we were looking at the abortion ground or vice versa, does she then win or does she then lose in this case? I think if the Court were to, for example, find that the immigration judge's decision on the credibility finding as it relates to the religious ground was supportable and not so in as it relates to the abortion ground, if you will, I think the Court would have to remand that issue back to the board or back to the immigration judge. Or is there some cross-fertilization here, i.e., if she's not credible on the abortion ground, he's entitled to find her generally not credible? Well, I think that's the position that the government takes, Your Honor. We do think that she's not credible as it relates to both grounds. I think, let me point out in terms of the abortion. I think there's a different question that Judge Verzon is asking, though, and that is this, that does the immigration judge need to make a finding that because I found, because he found the petitioner incredible on account of, on the religious claim, that that lack of credibility also translates over into the claim on the forced abortion? I do, I agree, Your Honor, that it does translate over, and in this No, the question is, does the IJ need to make a finding of that? Because they seem to be sort of two discrete elements. They have two discrete claims. Now, you see, in other cases, you might find an IJ saying, because I find this particular claim incredible, I find the, I find the petitioner's claims incredible as to the second claim. I didn't read that in there. Your Honor, I'm going to have to disagree with the Court's analysis of the immigration judge's finding on credibility in this case, because, frankly, I think in reading the record, the immigration judge did make specific, he was very careful, I think, in making specific findings of incredibility, adverse findings of credibility as to both claims. He analyzed both claims. No, he did that. I grant you that. My question is somewhat different. I mean, to what extent are we entitled to rely on the adverse credibility finding on one claim to sustain the adverse credibility finding on the other claim? I think the Court in a, this Court in a 2003 decision, and forgive me for misstating the name if I do, because I'm not always good in pronunciations of these names, but in Mamidvawa, which was a 2003 decision by this Court, I think there was a similar issue. It certainly didn't involve a Chinese applicant, but in that case, the Court made the statement that if on one ground of asylum, an I.J. makes adverse credibility finding, that it's fair to assume, or it's fair to assume, for lack of a better term, that the overall testimony of the applicant, of the Petitioner, would be incredible and that as long as the immigration judge makes specific and cogent reasons for finding the adverse credibility in the case. And I think in this case, the immigration judge was very painful. He took painful steps in making very specific and cogent reasons why he found this Petitioner incredible. Let me just point out, and I know the Court has heard, has read the record, but I think it's very salient that in her description as to her 1995 abortion, you have a completely two-week window of time of difference in terms of when she claims she was, in her testimony, when she claims she was forced to undergo abortion. Kagan. If you were to ask me about something that happened five years ago, I couldn't tell you probably within two years when it happened. It just seems to me to be the weakest link. I mean, there were other things that I found somewhat disturbing, like the fact that the hospital seemed to be moving at points, but the date just seems like the weakest possible. Your Honor, and I defer to the Court's own feelings about that, but I think as a woman, if I have an abortion, I'm certainly going to remember that date, and I'm going to remember it quite clearly. And here's a woman who gave us a two-week difference of time in terms of when she was, she was forced to undergo the abortion. Is it the government's position that she didn't undergo an abortion? Your Honor, she certainly presented, she certainly presented evidence, if you will, that she, a medical record that she was, had an abortion on May 16th of 1995, but her testimony was, of course, inconsistent with that. We didn't do, when I say we didn't, the government never challenged the medical record in that it was never forensically tested. So we cannot, and I will not at this point, indicate whether there was anything in, you know. I mean, what's important is she had an abortion. The date is of secondary importance, isn't it? That is correct, Judge. But I think the, I think the inconsistencies go to, though, the internal inconsistencies in the Petitioner's testimony throughout her testimony and her declaration, even upon, even when her own attorneys are prodding her, I think it's very significant, Judge. It's substantial enough to damage her claim for asylum. Right, but if you start with the key fact that she actually had an abortion, then what does the credibility attack go to? You can't say at this juncture she didn't have it, right? Yes. So where does that leave you? I think it leaves us with the initial question that I was trying to address when I said that if she's incredible in regards to the Christianity belief, can you then find that she's incredible as to the, her claim for abortion? And I think the overall record in this case, Your Honor, is that her internal inconsistencies, both in her own testimony, upon prodding by her own attorney, in her declaration, altogether are substantial enough to damage her claim for, that go to the very heart of the nexus of her asylum claim, Your Honor. Let me ask you one unrelated question before you sit down. Why is it, why is a religious test important in this case, if you have, if the key question is the motive of the persecutors? In other words, let's say that she doesn't know anything about religion. She's just been going to these meetings for all these years and really doesn't have any genuine faith and wasn't paying attention. But the fact, her testimony was the police arrested her on the belief that she was a Christian. So isn't that the key question, whether she's credible about the arrest and the jailing and the beating and so forth? I think it's a good- Because in other words, it's like many of our imputed opinions are either, either whether they're religious or whether they're political. If they believe that she was a Christian and they put her in jail and they put her in jail to satisfy the test. I think you have to begin with one other presumption, Your Honor, with all due respect, is you have to believe that they, in fact, actually arrested her, even if they believed her to be involved in Christianity. Right, you have to believe that. But I mean, if we assume that's true, the rest of it is sort of irrelevant, isn't it? I don't think so, Your Honor. I don't think it's necessarily relevant.  He basically was entitled, or he was essentially saying I don't believe the whole story, including the beating and everything else. That's because he didn't, and I think what Judge Chalmers is saying is the fact that she wasn't a very good Christian, a reason to disbelieve that she was beaten. Let's assume she was a, you know, a not very knowledgeable Christian. And the question is whether that translates into a reason to disbelieve the beating, which is really what the issue was. I don't think that that in and of itself is enough to disbelieve the beating, but I think you have to take it, you cannot isolate that without looking at the entire testimony, and here you have to believe that there was a beating. And you've got a woman, you know, who, and I understand there's a lot of sympathy factors here, but here's a woman who, even about the beating, has told several different stories about that beating. So how do you believe that? I take that point, but I guess my other, my broader question was this, maybe it's better as a hypothetical, because you kind of get wrapped around that. Let's assume that we have a case where there is a, we know that there was a beating that occurred, police arrest on account of their belief that she was a Christian. Then the fact of her inconsistencies or lack of knowledge about the faith, in that instance, would not matter, would it? Your Honor, if you look at the imputed political opinion decisions of the Court, it would not matter. That would be correct, but I don't think you can, with all due respect, take that and isolate that without looking at the entire testimony. It's a hypothetical. It's a hypothetical. Yeah. Yeah. That's what hypotheticals are. We're stripping away. I'm not, I'm not, I'm not taking away your argument. Any further questions? Okay. Thank you. Thank you, Your Honors. Very good. Case just heard will be submitted. We'll proceed to the next case on the oral argument calendar, which is Chinn versus Gonzales.
judges: Thomas, Berzon, Mahan